IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| GARE OLIVER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO. 3:10cv47-REP-DWD |
| ) | |
| OMEGA PROTEIN, INC., ) | |
| ) | |
| Defendant and Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| GEORGE NOBLETT, INC. and ) | |
| NORTHERN NECK GAS COMPANY, ) | |
| ) | |
| Third-Party Defendants. ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the Third-Party Defendant, Northern Neck Gas Company's, motion to dismiss (Docket No. 31).[1] For the reasons set forth herein, it is the Court's recommendation that the motion be GRANTED, but that the Third-Party Plaintiff be GRANTED leave to amend.

---

[1]Northern Neck attached as an exhibit to the motion a printout of Omega's website which was not included in the pleadings. (Third Party Def.'s Br. Ex. D.) In accordance with Fed. R. Civ. P. 12(d), when matters outside the pleadings are included in a 12(b)(6) motion, the Court must treat the motion as one for summary judgment under Rule. 56. However, here, at oral argument, the parties stipulated that the website was both authentic and relied upon in the Third-Party Complaint, in accordance with the exception set forth in Gasner v. County of Dinwiddie, 162 F.R.D. 280 (E.D. Va. 1995) that does not mandate conversion. Therefore, the Court does not convert the motion to dismiss to one for summary judgment where the parties agree that the subject material is fairly encompassed within the pleadings.

## I. BACKGROUND

On March 2, 1992, Omega Protein Inc. ("Omega"), then known as Zapata Haynes Corporation, entered into a Master Service Contract ("the Contract") concerning the sale and service of propane tanks with George Noblett, Inc ("GNI"). (Third Party Compl. ¶ 9.) On May 15, 2008, purported employee Gary Oliver[2] was injured while servicing a propane tank at Omega's facilities, and he has since filed a Complaint against Omega seeking damages for his injuries. (Compl. ¶ 2.) Pursuant to Fed R. Civ. P. 14, Omega filed a third party complaint against both GNI and Northern Neck Gas Company ("Northern Neck"), seeking damages for breach of the Contract and for contractual indemnity. Subsequently, Northern Neck, pursuant to Fed R. Civ. P. 12(b)(6), filed the motion to dismiss at issue here, arguing, in part, that it is not a party to the Contract and must, therefore, be dismissed from the litigation.

The Contract identifies only Zapata Haynes Corporation (i.e. Omega) and GNI as parties. Northern Neck is not identified as a party in the Contract, nor is there any reference whatsoever to it in the Contract.

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only 'a short and plain

---

[2] Mr. Oliver has identified his employer at the time of the accident as both "B&G Gas Company, Inc./ Northern Neck Gas Co" and "Northern Neck Gas" (Third Party Pl.'s Opp'n Br. at 10.) At oral argument, the parties offered that the identity of Mr. Oliver's actual employer is unclear, and is still a matter for discovery, but the resolution of the issue does not affect the Court's ultimate recommendation.

statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citation omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive a 12(b)(6) motion, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)).

In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952. This rule, however, is inapplicable to legal conclusions. Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

### III. DISCUSSION

Omega's Third Party Complaint alleges three claims against GNI and Northern Neck, all of which arise out of the Contract. Omega alleges two claims for breach of contract and one claim for contractual indemnity. Northern Neck argues for dismissal on three grounds, namely: (1) that Northern Neck is not a party to the Contract; (2) that Omega is not a proper party to bring suit; and (3) that even if both entities are parties to the Contract, Northern Neck cannot be held liable.[3]

**A.     Northern Neck Is Not a Party to the Contract**

Ordinarily, a federal court sitting in diversity must apply the choice of law rules of the state in which it sits – Virginia in this case. Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938); Paul Bus. Sys. v. Canon U.S.A., Inc., 240 Va,. 337, 397 S.E. 848 (1934). However, where, as here, parties to a contract have expressly declared that the agreement shall be construed with reference to the law of a particular jurisdiction other than Virginia, Virginia courts will recognize such agreement and apply the law of the stipulated jurisdiction. Id. The Contract's forum selection clause dictates that the laws of the State of Louisiana shall apply and, therefore, Louisiana law must apply in this case where available and applicable. (Third Party Def.'s. Br. Ex. A.)

Under Louisiana law, "it is obvious that an individual cannot be liable for breach of a contract to which he is not a party." B-G & G Investors VI, L.L.C. v. Thiabaut HG Corp., 985 So.2d 837, 842 (La. Ct. App. 2008). The Contract expressly names two parties: Zapata Haynes Corporation (i.e. Omega), and George Noblett, Inc. (i.e. GNI). Northern Neck is not identified as

---

[3]Because the Court concludes that Omega's pleading fails to sufficiently assert that Northern Neck is a party to the Contract, and recommends dismissal of the Third Party Complaint on that basis, the Court does not address the additional arguments.

a party in the Contract, nor, as previously noted, is there any reference whatsoever to Northern Neck in the Contract.

The Contract refers to GNI as "Contractor," a term which it defines as "the company named in the first paragraph of this Contract and all affiliated, subsidiary, and/or interrelated companies including the officers and employees of such companies" (Third Party Def.'s. Br. Ex. A.¶ 21. E.)  Omega maintains that because the definition of "Contractor" includes "affiliated, subsidiary, and/or interrelated companies," and because Northern Neck is an affiliated, subsidiary, and/or interrelated entity, it must be considered as a party to the contract.  (Third Party Pl.'s Opp'n Br. at 3.)

The argument fails, for in order for Northern Neck to be a party to the Contract, it not only would have to be an affiliated, subsidiary, and/or interrelated company, but GNI would also have needed the authority to legally obligate Northern Neck.  <u>See generally</u> <u>Restatement (third) Agency</u>.  Omega has pleaded no such facts; nor has it cited any authority to demonstrate that GNI could legally "bind" Northern Neck.

Moreover, the mere use of the referential term "contractor" in reference to GNI in the preamble of the Contract does not necessarily enlarge the scope of the parties.  Although the term "contractor" is defined to encompass persons or entities beyond the parties to the Contract, Omega cites no authority to suggest that a definition can broaden the scope of the parties, or the authority of a party to bind another.  Indeed, it is illogical that one party, having no authority to obligate another legally, could do so simply expanding the definition of a referential term.

Finally, as counsel emphasized at oral argument, the factual allegations of GNI's contractual obligations refer solely to GNI, making no reference to Northern Neck (Third Party
5

Compl. ¶¶ 12-19.) Such lack of reference further highlights the deficiencies in Omega's pleadings. Where Omega pleads that GNI had certain contractual duties, it did so without including Northern Neck in its allegations.

Because Northern Neck is not a named party and, based on the pleadings, GNI does not appear to have authority to act on behalf of Northern Neck, it cannot be considered as a party to the Contract.[4]

**B.      Omega has Not Pleaded a Count for "Piercing the Corporate Veil"**

Omega has alleged, but in only perfunctory fashion, that Northern Neck is the "alter ego" of GNI. (Third Party Compl. ¶ 40.) Louisiana courts have not explicitly ruled on the appropriate choice of law for so called "alter ego" claims. Nevertheless, the Fifth Circuit, as the governing appellate authority, has predicted that Louisiana courts would look to the law of the state of corporate formation with regard to the issue. Lone Star Industries, Inc. v. Redline, 757 F.2d 1544, 1548 n. 3 (5th Cir.1985) (citing QuickC, Inc. v. QuickC International, 304 So.2d 402, 406-07 (La.App.), writ denied 305 So.2d 123 (1974)).

Traditionally, "piercing the corporate veil" occurs "vertically, from an individual to a corporation or vice versa, or from a parent to a subsidiary corporation. Virginia law, however, allows for the possibility that affiliates will be alter egos of each other." Buffalo Wings Factory, Inc. v. Mohd, Case No. 1:07cv612, 2008 U.S. Dist. LEXIS at *19 (E.D. Va. Oct. 15, 2008) (citing C.F. Trust, Inc. v. First Flight Ltd. P'ship, 111 F. Supp. 2d 734, 741 n.17 (E.D. Va. 2000)).

---

[4] The Court does not imply that a non-party to contract can never be bound by a contract. A contract can be enforced by or against a non-party in several ways, including "through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'" Arthur Andersen LLP v. Carlisle, 129 S. Ct. 1896, 1902 (U.S. 2009) (quoting 21 R. Lord, Williston on Contracts § 57:19, p 183 (4th ed. 2001)).

6

"In Virginia, unlike in some states, the standards for veil piercing are very stringent, and piercing is an extraordinary measure that is permitted only in the most egregious circumstances." Id. at 16. "A court can pierce the corporate veil only upon a showing that (1) the corporation was the '*alter ego*, alias, stooge, or dummy' of the other entity; and (2) 'the corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal crime.'" Buffalo Wings Factory, Inc., 2008 U.S. Dist. LEXIS 82247 at *19 (E.D. Va. Oct. 15, 2008) (quoting Cheatle v. Rudd's Swimming Pool Supply Co., 234 Va. 207, 212, 360 S.E.2d 828 (1987)).

Omega has pleaded no facts sufficient to pierce Northern Neck's corporate veil under controlling Virginia law.. Indeed, its Third-Party Complaint is devoid of any such claim. Although the "decision of whether to disregard the corporate fiction depends largely upon resolution of questions of fact," the Plaintiff has not alleged the necessary facts to support such a claim. Cheatle, 234 Va. at 212. Although Omega may have pleaded facts suggesting that Northern Neck was the "*alter ego*, alias, stooge, or dummy" of GNI, Omega does not allege *any* facts to show that "the corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal crime." Id. Omega has, in essence, only met half of its burden of pleading – it must "allege facts sufficient to state *all* the elements of [its] claim." Bass 324 F.3d at 765 (emphasis added).

Omega has merely *suggested* that it could plead such an alternate theory of liability, as it has offered a number of new facts at oral argument on the motion that are not alleged in the pleadings. Such additional facts, if properly plead, coupled with the current pleadings, provide a basis to allow Omega to correct the defects in the Third-Party Complaint. Therefore, the Court recommends that Omega be granted leave to amend to address the deficiency.

## C. The Use of a Fictitious Name, Alone, Does Not Render a Separate Entity A Party to the Contract

The Third Party Complaint also alleges that Northern Neck is obligated under the Contract because GNI uses the fictitious name "Northern Neck Gas Company." (Third Party Complaint ¶ 5.) GNI has indeed registered the fictitious name "Northern Neck Gas Company" with the State Corporation Commmision, as required by Va. Code 59.1-69. (Third Party Pl.'s Opp'n Br., Ex. I) Despite its use of the fictitious name however, GNI and Northern Neck Gas Company remain distinct and separate corporate entities. Indeed, the Complaint acknowledges as much. (Third Party Compl. ¶¶ 3-4.) The purpose of the fictitious name statute is to disclose the name of the actual owner of a business, operating under a fictitious name, in order to allow that corporation to be sued by its proper name. Leckie v. Seal,161 Va. 215, 224, 170 S.E. 844 (1933). GNI, when operating as "Northern Neck Gas Company," is still the party to the Contract. That fact, alone, does not obligate the separate entity, Northern Neck, under the Contract.

Omega also alleges that GNI and Northern Neck are operating together under the fictitious name "Noblett Appliance Propane & Gas" ("Noblett Appliance"). (Third Party Compl. ¶ 6.) Again, Omega does not allege any facts, or cite any authority, to demonstrate that Northern Neck, even if operating in partnership or joint venture with Noblett Appliance, is bound by the Contract. Despite the confusing nature of both GNI's fictitious name and the unregistered entity

of Noblett Appliance, the facts presently alleged do not give rise to a claim against Northern Neck under the Contract.[5]

## IV. CONCLUSION

For the reasons discussed herein, it is the recommendation of the Court that the Third-Party Defendant's motion to dismiss be GRANTED, but that the Third Party Plaintiff be GRANTED leave to amend.

Let the Clerk file this Report and Recommendation electronically and forward a copy to the Honorable Robert E. Payne, with notification to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/
Dennis W. Dohnal
United States Magistrate Judge

Richmond, Virginia
Dated: October 21, 2010

---

[5] The allegations that Northern Neck is an "alter ego" fall short of sufficiently pleading a claim because the Third-Party Complaint before the Court is solely based on a contract theory of relief. However, where other theories of relief appear plausible (i.e. a claim for piercing the corporate veil), the Court recommends that Omega be granted leave to amend.